286 So.2d 578 (1973)
DIVISION OF ADMINISTRATION, STATE of Florida DEPARTMENT OF TRANSPORTATION, an Agency of the State of Florida, and Broward County, a Political Subdivision of the State of Florida, Appellants,
v.
HILLSBORO ASSOCIATION, INC., et al., (Parcel 103), Appellees.
No. 72-586.
District Court of Appeal of Florida, Fourth District.
October 12, 1973.
*579 Barbara Ann Dell McPherson and Geoffrey B. Dobson, Tallahassee, for appellants.
James J. Richardson and Robert D. Canada of Henderson, Richardson, Canada, Henry, Buchanan & Munroe, Tallahassee, and Andrews, Singer & Lubbers, Ft. Lauderdale, for appellees.
OWEN, Chief Judge.
The condemnor in an eminent domain proceeding seeks reversal of the damage award because the jury was allowed to consider (and presumably the property owner was awarded) consequential damages to the adjoining remainder allegedly caused by the construction which subsequently took place on the parcel which was taken.
Appellee owned property on the north side of the Hillsboro Inlet in Broward County. This property was protected by a seawall along approximately 700 feet of its boundary. The Department of Transportation, desiring to build a new bridge across the inlet, instituted these proceedings and filed a Declaration of Taking which included two parcels of appellee's property, designated as Parcels 103 and 104. The latter parcel was merely a temporary detour easement, but Parcel 103 was appropriated in fee simple. It consisted of approximately 15,000 square feet of land with certain improvements thereon including 48 feet of the seawall. This taking occurred in December, 1964. Thereafter, the Department constructed a temporary or detour bridge across the inlet for use while the permanent bridge was under construction. After the detour bridge was erected and during the course of construction of the permanent bridge, a 300 foot section of appellee's seawall adjacent to the parcel taken was destroyed due to eroding of the land area behind it. It is the destruction of this 300 feet of seawall which is involved in this case.
Appellant contends that the jury should not have been permitted to consider, as an element of damage, the cost of rebuilding the 300 feet of seawall because (1) there was no competent evidence to show that the destruction of the seawall was caused by appellant, and (2) even had there been, as a matter of law such loss is not a proper element of severance damage to the remainder. We treat the latter point first because we feel that it alone is dispositive of this appeal.
Severance damage, i.e., the damage to the remainder when less than the entire property is appropriated, is the damage caused by the taking. It does not include that which is consequential as a result of the manner in which the construction is performed. Weir v. Palm Beach County, Fla. 1956, 85 So.2d 865; City of Tampa v. Texas Co., Fla.App. 1958, 107 So.2d 216.[1] The injury or damage caused is damnum absque injuria where the construction is lawful and performed without negligence or misconduct. Paty et al. v. Town of Palm Beach, 1947, 158 Fla. 575, 29 So.2d 363. If the damages result from negligence or misconduct in performing the construction, they would be the proper subject of a separate action in tort (where sovereign immunity is waived) or the proper subject of the claims bill (as was done in this case).[2]
Without detracting from our holding herein that such consequential damages to the remainder are not properly to be considered in an eminent domain proceeding, we agree with appellant's contention that there was no competent evidence that the construction of the bridge and its approaches caused the ultimate loss of the seawall. The only evidence on this point *580 (other than Chapter 70-504, discussed hereafter) was the non-expert opinion of appellee's witness, Edmund L. MacDonald. Over the objection of appellant's counsel, this witness was permitted to testify that the dredging and widening of the inlet changed the force and speed of the tide so that it directly impinged upon the seawall thereby causing the erosion and ultimate loss. Even had this opinion testimony been competent, the witness acknowledged that he had no knowledge that the Department of Transportation was responsible for the dredging and widening of the inlet. There was no testimony to the effect that the construction of the bridge and approaches caused the loss of the seawall.
Appellee placed in evidence a copy of Chapter 70-504, Laws of Florida,[3] a legislative claims bill which we have set out in full in the margin. It is appellee's contention that the legislative finding set forth therein conclusively establishes that the construction caused the change in velocity, pattern and flow of the waters of the intracoastal waterway in such a manner as to greatly increase the erosion of the property and the undermining and damaging of the seawall. Though the argument is ingenious and somewhat persuasive, we must reject it as being violative of due process. Somewhat paradoxically, while appellee insists that the act conclusively establishes causal relationship between the construction and the damage to the seawall, it apparently is not willing to accord the same degree of conclusiveness to the finding as to the amount of such *581 damages[4] nor to the language which provides that payment is directed "to settle the claim".
Appellant also raises as a point on appeal the taxation of certain items of costs, but we find this point to be without merit on the authority of Cheshire v. State Road Dept., Fla.App. 1966, 186 So.2d 790.
The judgment is reversed and this cause remanded for the purpose of a new trial.
Reversed and remanded.
CROSS and MAGER, JJ., concur.
NOTES
[1] In the last cited case, Judge Allen's scholarly opinion exhaustively treats this subject.
[2] Discussed infra.
[3] OF FLORIDA CHAPTER 70-504
CHAPTER 70-504
House Bill No. 883
AN ACT for the relief of Hillsboro Association, Inc., a Delaware corporation, on account of funds expended to repair damage to real property caused by actions of the division of road operations in installing and maintaining a detour bridge across the intracoastal waterway at Hillsboro Inlet, Broward County; directing the division of road operations to satisfy said claim by payment out of specified funds; providing an effective date.
WHEREAS, the division of road operations did construct and maintain a certain detour bridge and replacement bridge across the intracoastal waterway at or near Hillsboro Inlet, Broward County, during a period of time beginning in December, 1964, and ending June, 1966, and
WHEREAS, throughout this period, Hillsboro Association, Inc., a Delaware corporation, was the owner in fee simple of that certain parcel of real property known as the South 300 feet of Government Lot 1 in Section 29, Township 48 S, Range 43 E, also known as 901 State Road A1A, Hillsboro Beach, Broward County, Florida, and
WHEREAS, said parcel of real property lies along the northernmost edge of Hillsboro Inlet immediately abutting and lying adjacent to said detour bridge and replacement bridge, and
WHEREAS, the construction undertaken by the division of road operations did change the velocity, pattern and flow of the waters of the intracoastal waterway in such a manner as greatly to increase the erosion of said real property and the undermining and damaging of a seawall maintained by Hillsboro Association, Inc. along the southernmost border of said real property, and
WHEREAS, as a direct and proximate result of said construction, Hillsboro Association, Inc. was required to expend for the repair and rebuilding of said seawall the sum of seven thousand five hundred dollars ($7,500.00), NOW, THEREFORE,
Be It Enacted by the Legislature of the State of Florida:
Section 1. The facts stated in the preamble of this act are found and declared to be true.
Section 2. The division of road operations is directed to settle the claim by paying to Hillsboro Association, Inc. the sum of seven thousand five hundred dollars ($7,500.00).
Section 3. The payment required by section 2 shall be made from any funds available to the division of road operations and not otherwise appropriated or, if there be no such funds, from the general funds of the division of road operations. If there are not sufficient funds subject to the use of the division of road operations to satisfy said claim, then it shall make provision for payment thereof in the first budget adopted by the division.
Section 4. This act shall take effect July 1, 1970.
Became a law without the Governor's approval.
Filed in Office Secretary of State July 1, 1970.
[4] Appellee's witness, Edmund L. MacDonald, testified that the total cost of the replacement of the seawall was $17,475.00, and that after receiving the $7,500.00, there was still claimed in the instant suit the sum of $9,975.00.